IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HAKIM BLATCH,

          *Petitioner,*

v.

JOHN RIVELLO, et al.,

          *Respondents.*

CIVIL ACTION
NO. 21-4879

**Pappert, J.**                                                                                   February 25, 2025

## MEMORANDUM

    Hakim Blatch was convicted in 2015 by a state-court jury of criminal conspiracy, burglary, robbery, carrying a firearm without a license and two counts of aggravated assault. He was sentenced to 23-to-46 years' incarceration. In 2021, he filed a *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, advancing twelve claims. Magistrate Judge Sandra Moore Wells issued a Report and Recommendation recommending denial of all claims. Blatch objected to Judge Wells's analysis for four of the claims. After thoroughly reviewing the record, the Court overrules the objections and adopts the R&R in its entirety.

I

A

    The events that led to Blatch's arrest were comprehensively summarized by the Superior Court during direct appeal proceedings. *See Commonwealth v. Blatch*, 169 A.3d 1157, 2017 Pa. Super. Unpub. LEXIS 1367, at *1-6 (Pa. Super. Apr. 12, 2017) (quoting Trial Court Opinion, 6/15/16, at 2-7). In short, Blatch and his co-conspirators forcefully entered Ronald McNeil's apartment pursuant to a plan to rob him. *Id.*, at *1-

1

4. Upon entering, Blatch's co-defendant Quadir Jeffries pistol whipped McNeil and threatened to shoot him while the others ransacked the apartment, stealing cash and marijuana. *Id.*, at *4. When McNeil's neighbor, Michael Scott, opened his door to see what was happening, one of Blatch's co-conspirators shot him in the left arm. *Id.*, at *4.

Blatch was arrested on June 4, 2014 and charged with several crimes, including aggravated assault under 18 Pa. Cons. Stat. § 2702(a)(1). *Id.*, at *7. The police connected Blatch to the crime by, *inter alia*, (1) a police statement from his girlfriend, one of the co-conspirators, identifying him as a conspirator; (2) an identification by Deputy Sheriff Martin Samuels, who was acquainted with Blatch, after he reviewed surveillance video of the robbery; and (3) cell phone tower analysis of the location of Blatch's cell phone on the night of the robbery. *Id.*, at *5-6.

On December 10, 2015, a jury found Blatch not guilty of attempted murder and guilty of criminal conspiracy, burglary, robbery, carrying a firearm without a license and two counts of aggravated assault. (Dec. 10, 2015 Tr. at 7-8, ECF No. 43-9.) On December 17, 2015, Blatch was sentenced to an aggregate term of 23-to-46 years' incarceration. (Dec. 17, 2015 Tr. at 20-21, ECF No. 43-10.) On April 12, 2017, the Superior Court affirmed his conviction and sentence, and the Pennsylvania Supreme Court denied allocatur. *Commonwealth v. Blatch*, 169 A.3d 1157, 2017 WL 1373756 (Pa. Super. Ct. Apr. 12, 2017), *appeal denied*, 170 A.3d 1027 (Pa. 2017).

B

On October 26, 2017, Blatch filed a *pro se* petition under the Pennsylvania Post-Conviction Relief Act. *See Commonwealth v. Blatch*, 242 A.3d 393, 2020 Pa. Super. Unpub. LEXIS 3480, at *8 (Pa. Super. Ct. Nov. 6, 2020). He filed a counseled amended

petition on September 23, 2018. *Id.* On July 12, 2019, the PCRA court denied Blatch's petition without a hearing. *Id.* On November 6, 2020, the Superior Court affirmed the denial of Blatch's petition, and on May 17, 2022, the Pennsylvania Supreme Court denied allocatur. *Id.*, *appeal denied*, 242 A.3d 391 (Pa. 2020).[1]

On November 3, 2021, Blatch filed this *pro se* petition under 28 U.S.C. § 2254, asserting twelve claims. (ECF No. 1.) The Commonwealth responded on October 19, 2022. (ECF Nos. 15.) On June 28, 2024, Magistrate Judge Wells issued her R&R recommending that all twelve claims be denied. (ECF No. 47.) Blatch objected to Judge Wells's conclusions as to four of the twelve claims. (ECF No. 52.)[2]

## II

### A

28 U.S.C. § 2254 bars the Court from granting *habeas* relief on any claim that a state court has already adjudicated on the merits unless the state court's decision (1) "resulted in a decision that was contrary to, or involved an unreasonable application of,

---

[1] At first, Blatch did not seek allocatur with the Pennsylvania Supreme Court. However, in a second PCRA petition, he sought reinstatement of his right to seek review of the Superior Court decision, and the PCRA court granted that petition.

[2] The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court reviews *de novo* the specific portions of the R&R to which a party objects. 28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998). For portions of the R&R to which no objection is made, "a district court is not required to determine *de novo* whether a magistrate judge erred" in denying such claims. *Medina v. DiGuglielmo*, 461 F.3d 417, 426 (3d Cir. 2006) (citing Fed. R. Gov. § 2254 Cases 8(b)). However, as a matter of good practice, courts generally review unobjected-to claims for clear error. *See, e.g.*, *Harris v. Mahally*, No. 14-2879, 2016 WL 4440337, at *4 (E.D. Pa. Aug. 22, 2016).

Judge Wells denied Blatch's claims (1)(a) and (6) as non-cognizable. She denied claim (1)(b) as procedurally defaulted. She denied claims (2-5), which were not procedurally defaulted, on the merits. Finally, she denied claims (7-12) under the *de novo* standard of review because the Government did not assert procedural default.

Blatch objected to Judge Wells's conclusions only as to claims (2), (4), (11) and (12), so the Court reviews those claims *de novo*. After reviewing the record and the R&R, the Court perceives no clear error in Judge Wells's conclusions regarding the remainder of the claims.

clearly established Federal law, as determined by the" United States Supreme Court; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Clearly established" federal law consists only of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Andrew v. White*, No. 23-6573, 604 U.S. ----, slip op. at 5 (Jan. 21, 2025) (per curium) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). A legal principle upon which the Supreme Court relies to decide a case is a "holding" for AEDPA purposes. *Id.* at 6.

    A decision is contrary to federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). The "unreasonable application" clause permits a court to grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Whether a state court's application of federal law is "unreasonable" is judged objectively. *Id.* at 409–10. "[A]n application may be incorrect but still not unreasonable," *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001), so a petitioner must show that the state court's error is "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013). But a federal *habeas* court generally must also review the state court's opinion on its own terms and "may not speculate as to theories that 'could have supported' the state court's decision*." Dennis v. Sec'y, Pa.*

4

*Dep't of Corrs.*, 834 F.3d 263, 283 (3d Cir. 2016) (en banc).³  Finally, a decision is not based on an unreasonable determination of facts "merely because the federal *habeas* court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (quotations omitted).

If a federal *habeas* court determines that a petitioner meets one of § 2254(d)'s exceptions, the court "must then resolve the claim without the deference [28 U.S.C. § 2254(d)] otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007).

B

To succeed on a claim for ineffective assistance of counsel, a petitioner must show that (1) his "counsel's performance was deficient," and (2) he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Both prongs are "mixed questions of law and fact." *Id.* at 698.

Counsel's performance is deficient when it falls "below an objective standard of reasonableness." *Id.* at 687–88.  Courts apply a "strong presumption" of reasonableness and should endeavor "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.  And when "the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of counsel), the presumption [of reasonableness] may only be rebutted through a showing that no sound strategy . . .

---

³ Only when the federal court "cannot be sure of the precise basis for the state court's ruling" may the federal court "gap fill[]" and speculate about reasonable theories.  *Dennis*, 834 F.3d at 283.

could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005). In cases where a state court has already passed on the merits of an ineffective-assistance claim, the federal *habeas* court's review is "doubly" deferential, so as "to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quotations omitted).

To establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). To determine the likelihood of a different outcome, the Court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Counsel cannot be found to be ineffective for failing to pursue a meritless claim. *See United States v. Bui*, 795 F.3d 363, 366–67 (3d Cir. 2015).

III

Blatch first objects to Judge Wells's conclusions on the two claims he raised in his PCRA petition: (1) ineffective assistance of trial counsel for failure to meet with or interview Blatch in preparation for trial, and (2) ineffective assistance of trial counsel for failing to object or request a mistrial when Deputy Sheriff Samuels testified that he previously arrested Blatch for domestic abuse. (Pet. at 10, ECF No. 1.)

A

In support of his contention that trial counsel did not adequately meet with and interview him, he says that "in the seventeen-month pre-trial period, Blatch had two

five-minute conversations with Ms. Litwin in the holding pens at the Criminal Justice Center." (Traverse at 5, ECF No. 40.) One meeting purportedly took place in July 2014, when his attorney introduced herself on a video monitor, claimed "she doesn't know anything about the case because its [sic] grand jury," and asked if he had any information on "homicides." (Traverse at 9-10.) The second meeting took place "during a court appearance on January 15, 2015, where she again" told him she "doesn't know anything about the case because the discovery hasn't been released." (*Id.* at 10.) He claims he never "had an opportunity to consult with his attorney about trial strategy or a defense, guilty plea, witnesses, or any other type of pre-trial preparation" despite sending "several letters" and "call[ing] her office daily." (*Id.* at 5, 10.) The final time he saw counsel was on the day of trial, when she purportedly told him "it was too late to prepare a defense because they were ready to start trial today." (*Id.* at 10.)

i

Blatch argues counsel's failure to meet with him before trial is *per se* ineffective assistance under *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court identified three situations that are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658-59. These are: (1) the "complete denial of counsel" at a "critical stage," which is a "step of a criminal proceeding, such as arraignment, that [holds] significant consequences for the accused," (2) if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) "in cases like *Powell v. Alabama*, 287 U.S. 45 (1932), where counsel is called upon to render assistance under circumstances where competent

7

counsel very likely could not." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quotation omitted).

The Superior Court's analysis of Blatch's *Cronic* claim was contrary to, or at least an unreasonable application of, federal law. The Superior Court, citing *Cronic*, recognized that there are "limited circumstances" in which counsel is *per se* ineffective, and referenced the first category of the "complete denial of counsel." *Commonwealth v. Blatch*, 242 A.3d 393, 2020 Pa. Super. Unpub. LEXIS 3480, at *21 (Pa. Super. Ct. Nov. 6, 2020). The court then suggested that *Cronic*'s reach is limited to three particular situations in which the Pennsylvania courts have determined that counsel's conduct was *per se* ineffective, specifically where counsel: (1) fails to file a requested direct appeal; (2) fails to file a statement of matters complained of on appeal; and (3) fails to file a requested petition for allowance of appeal. *Id.*, at *21-22 (citing *Commonwealth v. Fink*, 24 A.3d 426, 432 (Pa. Super. Ct. 2011)). Because Blatch "has not alleged that any of these three situations occurred," the Superior Court reasoned, "he cannot demonstrate that trial counsel was *per se* ineffective." *Id.*, at *21.

To start, all three of the prior applications of *Cronic* cited in *Fink* relate to "omissions of counsel on *appeal* that completely foreclose appellate review." *Fink*, 24 A.3d at 432 (emphasis added). But Pennsylvania courts have applied the *Cronic* presumption beyond these three appeals-related circumstances when addressing ineffective assistance of trial counsel claims. *See, e.g.*, *Commonwealth v. Diaz*, 226 A.3d 995, 1011 (Pa. 2020).

More fundamentally, however, federal rights may not be limited by state courts, so the reach of a federal right is not limited to the Pennsylvania courts' prior

applications of that right. The *Cronic* presumption has of course been applied beyond the three limited circumstances described in *Fink*. *See, e.g.*, *Appel v. Horn*, 250 F.3d 203, 217 (3d Cir. 2001). Because the Superior Court applied a standard constrained by Pennsylvania case law, rather than dictated by the Supreme Court of the United States, its decision was contrary to, or at least an unreasonable application of, federal law.[4] The Court therefore reviews Blatch's *Cronic* claim without deference to the Superior Court's decision. *See Panetti*, 551 U.S. at 953.

ii

Blatch's claim fails to satisfy the second or third *Cronic* categories. Counsel did not "entirely fail" to subject the prosecution's case to adversarial testing. She cross-examined the Commonwealth's witnesses, gave opening and closing statements, and objected several times throughout the course of the trial.[5] And the third category is not applicable because counsel was not called upon to represent Blatch under circumstances where she very likely could not, such as in *Powell* where the court appointed an attorney on the day of trial who "had not had an opportunity to prepare the case or to familiarize himself with local procedure." *Cronic*, 466 U.S. at 669.

---

[4] This is one of those cases described in *Williams v. Taylor* in which it is difficult to distinguish "those state-court decisions that involve an unreasonable application of a legal principle" from decisions that "arrive at a conclusion opposite to that reached by this Court on a question of law." 529 U.S. 362, 408 (2000). The Court need not resolve this question because, as in *Williams*, "it is both." *Id.* at 391

[5] *See, e.g.*, (Dec. 3, 2015 Tr. at 78-85) (opening statement); (Dec. 9, 2015 Tr. at 22-41) (closing statement); (Dec. 3, 2015 Tr. at 119-21) (cross-examination of Officer Floiran Pagan); (*Id.* at 171-72) (cross-examination of Michael Scott); (*Id.* at 193-94) (cross-examination of Officer Ricardo Dameus); (Dec. 4, 2015 Tr. at 88-00) (cross-examination of Ronald McNeil); (*Id.* at 130-32) (cross-examination of Detective Michael Dinezza); (Dec. 8, 2015 Tr. at 19-31) (Detective James Miles); (*Id.* at 54-55) (cross-examination of Officer Joseph Flynn); (*Id.* at 118-19) (cross-examination of Detective Thorsten Lucke); (*Id.* at 173) (cross-examination of Detective Laura Hammond); (*Id.* at 222-26) (cross-examination of Detective James Dunlap).

With respect to the first *Cronic* category, Blatch contends the "pre-trial stage is indeed a 'critical stage' for Sixth Amendment purposes." (Obj. at 4, ECF No. 52.) Neither the Supreme Court nor the Third Circuit Court of Appeals have held so broadly. The Third Circuit has noted that it "read[s] *Cronic* in a limited fashion," and refuses to apply the presumption if there is a denial of counsel "at any critical stage at which the right to counsel attaches." *Ditch v. Grace*, 479 F.3d 249, 256 (3d Cir. 2007). Rather, "a presumption of prejudice applies only in cases where the denial of counsel would necessarily undermine the reliability of the entire criminal proceeding." *Id.*

Blatch relies on *Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003), in which the Sixth Circuit applied the *Cronic* presumption and held that the "pre-trial period constitutes a critical period because it encompasses counsel's constitutionally imposed duty to investigate the case." *Mitchell*, 325 F.3d at 744. *Mitchell* reasons that the duty to investigate "necessarily" means "counsel cannot discharge this duty if he or she fails to consult with his or her client." *Id.* at 744. Counsel in *Mitchell* met with his client three times for a total of six minutes before trial, was disbarred for one of the six months prior to trial, and did not make an opening statement. *Id.* at 735-37. But unlike in *Mitchell*, there are no facts in the state court record to support Blatch's claim.[6]

Blatch relies on conclusory factual assertions, many of which do not seem to bear out. For example, he claims counsel "never prepared a proper defense for trial." (Pet. at 10.) But, again, counsel clearly prepared for the trial. *See supra* note 8. Blatch

---

[6] There are several cases involving claims like Blatch's where, even after evidentiary hearings, the courts did not follow *Mitchell*. *See, e.g.*, *United States v. Nguyen*, 619 Fed. App'x 136, 140 (3d Cir. 2015); *Graves v. Padula*, 773 F. Supp. 2d 611, 620-21 (D.S.C. Mar. 30, 2010); *Ward v. Lafler*, No. 08-12788, 2011 WL 4595992, at *8-9 (E.D. Mich. Sept. 30, 2011).

claims counsel "failed to raise any objections to testimony prejudicial to" him. (Traverse at 6.) But counsel objected numerous times throughout the trial. *See, e.g.*, (Dec. 7, 2015 Tr. at 5-6, ECF No. 43-6); (*id.* at 285-86) (objection sustained). Finally, Blatch claims that one of the two instances he saw counsel was "at court on January 15, 2015." (*Id.*) But the state court docket does not reflect that there were any court proceedings that day. (*Commonwealth v. Blatch*, CP-51-CR-0007792-2014, at 5.)

Nonetheless, Blatch rests his claim on the unsupported allegation that counsel only met with him twice for five-minutes each. Blatch requests an evidentiary hearing to support his claim, (Obj. at 20), but fails to satisfy the requisite AEDPA standard to obtain one. AEDPA prohibits a federal court from holding an evidentiary hearing for petitioners who "failed to develop the factual basis of a claim in State court proceedings," unless one of two exceptions are met. 28 U.S.C. § 2254(e)(2). In his counseled PCRA petition, Blatch made a perfunctory request for an evidentiary hearing "to explore the above outlined issues." (Am. PCRA Pet. at 7.) The PCRA court denied it because he failed to specify what evidence he believed counsel would have uncovered had she interviewed Blatch. *See Commonwealth v. Blatch*, 242 A.3d 393, 2020 Pa. Super. Unpub. LEXIS 3480, at *17-20 (Pa. Super. Ct. Nov. 6, 2020).[7] Blatch's failure to

---

[7] The Superior Court affirmed the denial of the evidentiary hearing without discussion, so the Court "looks through" to the PCRA court's reasoning. *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008) ("[W]e should review the PCRA decision since it either represents the state courts' last reasoned opinion on this topic or has not been supplemented in a meaningful way by the higher state court."). The PCRA court applied Pennsylvania's bar on evidentiary hearings for a petitioner who fails to explain what they seek to uncover. *See Commonwealth v. Cousar*, 154 A.3d 287, 299-300 (Pa. 2017) ("PCRA hearings are not discovery expeditions, but are conducted when necessary to offer the petitioner an opportunity to prove his explicit assertion of ineffectiveness raising a colorable claim about which there remains an issue of material fact. . . . Mere conclusory allegations, without some proffer as to what counsel would say in response to the allegations are insufficient to establish entitlement to relief.").

satisfy the state court's requirements for obtaining an evidentiary hearing constitutes a failure to diligently pursue the claim. *See Williams v. Taylor*, 529 U.S. 420, 437 (2000) ("Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court *in the manner prescribed by state law*.") (emphasis added).[8]  Because Blatch fails to satisfy either of AEDPA's exceptions, the Court cannot grant an evidentiary hearing on this claim and must resolve the petition on the record before it.

Where "there is nothing in the record to support Petitioner's statements," a federal *habeas* court "cannot accept a petitioner's unsupported allegations as true." *Graves v. Superintendent*, No. 10-cv-3481, 2012 WL 4931010, at *9 (E.D. Pa. Sept. 17, 2012).  Here, there is nothing in the record from which the Court could conclude Blatch was subject to a "complete denial of counsel" in the months leading up to trial.[9]

B

Blatch next claims trial counsel failed to object and move for a mistrial after the Commonwealth's witness, Deputy Sheriff Samuels, when asked if he had ever

---

[8]  Blatch claims that, like the petitioner in *Mitchell*, he sent several letters to counsel expressing his dissatisfaction. (Traverse at 10.)  But unlike in *Mitchell*, the state courts here did not have copies of these letters and the Court has no way of verifying their existence, much less their substance.

He also attaches a letter in which his PCRA counsel stated "I contacted your trial attorney to ask her version regarding how many times she visited you [and] [s]he admitted that your account was accurate as she recalled it." (Traverse ex. A.)  The letter, however, was not part of the PCRA court record, which the Court may not go beyond.

[9]  To the extent Blatch contends counsel's alleged failure to meet with him was unreasonable under *Strickland*, this argument fails.  He argued to the Superior Court that, had counsel interviewed him, he would have told her about two potential witnesses beneficial to his defense.  The Superior Court rejected this claim because Blatch was unable to show that the witnesses would have been willing or able to testify, or even what their testimony would have been. *Commonwealth v. Blatch*, 242 A.3d 393, 2020 Pa. Super. Unpub. LEXIS 3480, at *23 (Pa. Super. Ct. Nov. 6, 2020). "Devoid of any actual facts, [Blatch] cannot demonstrate a probability that the outcome of the trial would have been different if the jury heard from these witnesses." *Id.*  Blatch fails to explain how this decision was an unreasonable application of *Strickland*.

interacted with Blatch, said, "I locked him up for domestic abuse." (Dec. 7, 2015 Tr. at 33:17-20.) Blatch's counsel did not object to this statement, but his co-defendant's counsel did. (*Id.* at 33:22.) The Court immediately instructed the jury to "disregard that last statement. Don't consider that in any way." (*Id.* at 33:23-34:3.) Blatch contends Samuels's testimony "led the jury to infer that he was prone to violence and thus convict him of two aggravated assaults, even though there is no evidence that he himself laid hands on [the] victims." (Traverse at 26.) The Superior Court agreed that Samuels's statement was inadmissible evidence of prior bad acts but denied Blatch's claim for lack of prejudice. *Commonwealth v. Blatch*, 242 A.3d 393, 2020 Pa. Super. Unpub. LEXIS 3480, at *14-17 (Pa. Super. Ct. Nov. 6, 2020).[10]

In Pennsylvania, a witness's reference to prior criminal activity does not require reversal unless the defendant is prejudiced by the comment. *Commonwealth v. Blystone*, 725 A.2d 1197, 1204-05 (Pa. 1999) (holding there was no prejudice from reference to prior criminal history because "there was overwhelming evidence of guilt against appellant"). Further, a "singular, passing reference to a prior conviction is simply not sufficient to show that the trial court abused its discretion in denying [a] motion for a mistrial." *Commonwealth v. Kerrigan*, 920 A.2d 190, 200 (Pa. Super. Ct. 2007). "The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Commonwealth v. Richardson*, 437 A.2d 1162, 1165 (Pa. 1981); *see also Commonwealth v. Guilford*, 861 A.2d 365, 370–71 (Pa. Super. Ct. 2004) (finding

---

[10] The Pennsylvania Supreme Court applied a three-prong test for ineffectiveness claims that is co-extensive with *Strickland*. See *Commonwealth v. Pierce*, 515 Pa. 153 (Pa. 1987) (adopting *Strickland*)); *Perez v. Rozum*, 488 Fed. App'x 656, 658 n.2 (3d Cir. 2012).

no trial court error in denying a mistrial where there were two passing references to the defendant's prior convictions); *Commonwealth v. Washington*, 285 A.3d 946, 2022 WL 4373308, at *5-6 (Pa. Super. Ct. 2022).

Here, counsel was not objectively unreasonable in not moving for a mistrial because such a motion would have likely failed. Samuels's remark was a singular, passing reference to a prior arrest, it was not elicited or exploited by the prosecution,[11] it did not suggest he was convicted or incarcerated, and it was met with an immediate curative instruction. *See Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001) ("The law presumes that the jury will follow the instructions of the court."). Even if counsel's performance was deficient, the Superior Court's finding that there was no prejudice from counsel's decision not to move for a mistrial was not an unreasonable application of *Strickland*. Samuels's comment did not create a reasonable probability that, but for the stray remark, the outcome of the trial would have been different.[12]

IV

Blatch next contends trial counsel was ineffective for not asking the court to instruct the jury on the lesser charge of aggravated assault. (Pet. at 28-30.) Although it appears that these claims were not properly presented to the state courts for review,

---

[11] Not only was Samuels's comment not elicited by the prosecution, the prosecution had instructed Samuels not to "testify to the [domestic violence] arrest unless questioned upon by the defense." (Dec. 1, 2015 Tr. at 24, ECF No. 43-1.)

[12] Blatch contends the trial court should have further instructed the jury to "not regard the evidence as showing that the defendant is a person of bad character," (Obj. at 19), but the court's instruction not to consider the statement "in any way" subsumes Blatch's preferred instruction. Blatch also contends the trial judge should have given the instruction again in the final jury instructions. (*Id.*) But once instructed, the jury is presumed to follow.

the Commonwealth did not raise procedural default in its response. The Court therefore reviews these claims *de novo*.[13]

Blatch was convicted of attempted aggravated assault pursuant to 18 Pa. Cons. Stat. § 2702(a)(1), which states that one is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."[14] Blatch contends the evidence was insufficient to establish that it was his "intention or conscious object or purpose to cause or attempt to inflict serious bodily injury." (Pet. at 28.) Thus, he argues counsel should have requested a lesser charge of aggravated assault under 18 Pa. Cons. Stat. § 2702(a)(4), under which someone is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon."

In Pennsylvania, "[i]t is well settled that upon an indictment for a particular crime, the defendant may be convicted of a lesser offense included within it." *Commonwealth v. Nace*, 295 A.2d 87, 88 (1972). Defendants may request that the jury be instructed of lesser-included offenses, but an offense is only characterized as such if "each and every element of one offense is necessarily an element of a greater offense."

---

[13] Ordinarily, before a federal court may grant a petition for a writ of *habeas corpus*, the petitioner must exhaust the remedies available in state court. *Lambert v. United States*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). Procedural default, however, is an affirmative defense that usually "must be raised" by the state. *Welch v. United States*, 578 U.S. 120, 139 (2016). "[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 210 (2006). But a district court should not raise procedural default if "it is perfectly clear that the applicant does not raise even a colorable federal claim." *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *see also Szuchan v. Lehman*, 273 F.3d 299, 321 n.13 (3d Cir. 2001).
Here, it is clear that claims (11) and (12) are not colorable, so the Court reviews them *de novo*.

[14] The Commonwealth conceded that the victims did not suffer serious bodily injury, so the defendants were charged with *attempt* to cause serious bodily injury. (Dec. 8, 2015 Tr. at 243:17-20.)

15

…
…

*Commonwealth v. Ferrari*, 593 A.2d 846, 848 (Pa. Super. Ct. 1991). Aggravated assault under 2702(a)(4) is not a lesser-included offense to 2702(a)(1) because the former requires proof that it was committed with a deadly weapon. *Id.* Accordingly, counsel was not deficient for not requesting the jury instruction.

V

A certificate of appealability should only be issued if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the District Court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Blatch has made no such showing, so no certificate should issue.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.